IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER CORTEZ,<br><br>    Petitioner,<br><br>  vs.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-2478 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner, a prisoner of the State of California, currently incarcerated at the Correctional Training Facility in Soledad, California, filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("BPT") denial of parole during parole suitability proceedings in 2004. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has not filed a traverse. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

Petitioner was convicted of first degree murder with an enhancement for the use of a firearm, in Los Angeles County Superior Court in 1986, and was sentenced to a term of twenty-seven years-to-life in state prison. Petitioner's minimum parole eligibility date was June 17, 2002. In this habeas action, Petitioner does not challenge his conviction, but instead alleges that his due process rights were violated by the denial of parole during

his subsequent parole suitability hearing on February 4, 2004.

At the parole hearing, Petitioner appeared with counsel before a BPT panel. The Board relied upon the following account of Petitioner's commitment offense set forth in the probation officer's report:

> On the date of the offense the defendant went to the residence of victim Fermin Vasquez (also known as Javier Vasquez). The door was answered by Alma Olivas who was the girl friend of the victim's brother. She stated that the victim was not at home and had not been home in a couple of nights. The defendant stated that he worked with the victim. Ms. Olivas suspected that the defendant was not telling the truth because he could not answer several questions regarding the employment satisfactorily. The defendant subsequently left.
>
> Several minutes later the victim returned home and was given the above information. He state that he did not know the defendant or that such individual worked with him. A few minutes passed whereupon the defendant returned to the residence but was told that the victim was not there. Again the defendant returned a third time whereupon the victim's brother and the victim answered the door. The defendant stated to the victim "is your name Javier Vasquez?" The victim replied in the affirmative whereupon the defendant pulled out a pistol with a four-inch barrel from his waistband and stated "Come away with me." The victim subsequently left with the defendant and they drove away.
>
> Approximately one and a half hours later a witness found the victim laying on the dirt shoulder on La Tuna Canyon Road near the 210 freeway. The police and paramedics were summoned and the victim was transferred to Holy Cross Hospital via ambulance. He was accompanied by Los Angeles Police Department Officer Escobedo. The victim stated "This guy shot me . . . I don't know who he was . . . He said I stole something of his . . . He was driving a gray car." The victim received emergency treatment at Holy Cross Hospital but subsequently died. The autopsy revealed that he died of multiple gunshot wounds to the abdomen.
>
> Investigating officers subsequently interviewed witness Alma Olivas who stated that the defendant was an employee of Roman's Market, 13310 Fillmore Street in Pacoima. Further investigation revealed that the defendant was an employee at such market but had not returned to work since the night of the offense. A Department of Motor Vehicle [sic] check revealed that the defendant lived at 13825 Eustace Street, Pacoima and that he drove a gray Barracuda automobile owned by his mother. A warrant was subsequently obtained and the residence was searched however the defendant had fled to Mexico.
>
> On January 29, 1985, the defendant was observed driving a Ford automobile while drinking a can of beer. He was stopped by officers and subsequent investigation revealed that the defendant had sold the

2

> car to an individual named Gerarod [sic] Avalos. Mr. Avalos claimed that he had purchased the car from the defendant however the defendant subsequently stole the vehicle. The defendant claimed that he merely repossessed the vehicle as Mr. Avalos had not paid the outstanding balance. In the process of this investigation the outstanding murder warrant was discovered and served.

(*See* Respondent's Answer, Exhibit 3 at 2-4.)

At the parole hearing, Petitioner admitted that he went to the victim's house three times, pulled out a gun, kidnaped him and shot him. Petitioner stated that he shot the victim when he saw the victim fighting with Petitioner's co-worker, Jaime Maldonado. Petitioner stated that he was drunk when he shot the victim, that the victim suffered, and could not say why he did not call an ambulance. He fled to Mexico because he was afraid of going to prison or getting the death penalty, and for the same reason he did not admit to the police that he shot the victim. He did not admit to killing the victim until approximately 2002. (Resp. Ex. 2 at 14-20, 52-57.)

The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety. The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, his prior criminal and social history, his programming and behavior since commitment, and any new progress and psychiatric evaluation since his last hearing. Petitioner challenged the BPT's decision in the state superior, appellate and supreme courts. The Los Angeles County Superior Court issued the last reasoned opinion denying Petitioner's claims. After the California Court of Appeal Supreme Court of California summarily denied his state habeas petitions, Petitioner filed the instant federal petition for a writ of habeas corpus. The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

3

**DISCUSSION**

A. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B. <u>Legal Claims and Analysis</u>

Petitioner claims that the BPT's denial of parole in 2004 violated his right to due

4

process because the decision was not supported by sufficient evidence,[1] and that the denial of parole was contrary to the Immigration and Naturalization Act ("INA").

### 1. The BPT Decision

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the BPT considers various factors, including the prisoner's social history, and base and other commitment offenses, including behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole. The panel concluded that Petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Respondent Ex. 3 at 68.) The panel explained that it found that the offense was carried out with "callous disregard for human life" and "in an especially violent and brutal manner," and the motive for the crime was "inexplicable and trivial." (*Id.*) The panel also found that Petitioner had "somewhat of an unstable social history and prior criminality," though it was "nothing serious." (*Id.*) Specifically, Petitioner had a history of alcohol abuse, which was a factor during the

---

[1]This argument is made in Claims One and Two in the petition. Claim Three alleges that the BPT failed to provide him a written statement of its opinion, Claim Four alleges the BPT failed to "set" his prison term pursuant to California Penal Code § 2931. Petitioner cites no clearly established Supreme Court authority, and the Court is aware of none, that either of these actions implicate his federal constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (violations of state law are not a valid basis for federal habeas relief).

commitment offense, and he had a prior conviction for possessing a billy club. (*Id.*)

The panel commended Petitioner his participation in self-help programs, his obtaining vocational certificates and educational degrees, and his lack of discipline since 1989. (*Id.* at 70.) The psychologist found his potential for violence no greater than the average citizen, unless Petitioner abused alcohol again. (Resp. Ex. 2 at 36.) The BPT noted, however, that Petitioner had not started participating in alcohol abuse programs or other self-help programs, or even admitted his role in shooting the victim, until 2002. Thus, the BPT further found that Petitioner's gains in self-help counseling, alcohol abuse therapy, stress and anger management, and acceptance of responsibility were "recent" and "he must demonstrate an ability to maintain these gains over an extended period of time." (Resp. Ex. 3 at 71-72.) The panel found that "a longer period of observation or evaluation is required" before Petitioner could be found suitable for parole, and recommended that Petitioner continue to participate in self-help and remain discipline-free. (*Id.* at 73.)

        2.       <u>The State Courts' Decisions</u>

The state superior court found that "some evidence" supported the BPT's denial of parole. The superior court opined that the commitment offenses was carried out in a an especially "violent and brutal manner in that the motive for the crime was very trivial in relation to the commitment offense." (Resp. Ex. 9 at 1-2.) The superior court found that there was not some evidence that Petitioner had an unstable social history, that his gains in prison were only recent, and that the commitment offense "demonstrated a callous disregard for human *suffering*." (*Id.* at 1, n.1 & 2.) Nevertheless, the superior court upheld the BPT decision on the grounds that there was "some evidence" to support the conclusion that the risk of danger to the public outweighed the positive aspects of Petitioner's history. (*Id.* at 2.) The California Court of Appeal and the California Supreme Court summarily denied Petitioner's habeas petitions.

6

### 3. The Federal Right to Due Process

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128). Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

The Ninth Circuit has recently clarified that "California courts have made clear that the 'findings that are necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety.'" *Hayward v. Marshall,* 512 F.3d 536, 543 (9th Cir.

2008) (citations omitted) (quoting *Irons v. Carey*, 505 F.3d 846, 850 (9th. Cir. 2007)). The relevant criteria under which the BPT ordinarily determines whether a prisoner is too dangerous to be found suitable for parole are set forth in the California Code of Regulations at Cal. Code Regs. tit. 15, § 2402. *Id.* This Court must therefore determine whether the state court decision upholding the BPT's decision was supported by "some evidence the parolee's release unreasonably endangers public safety." *Id.* (citation omitted.)

The state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

In this case, Petitioner continues to pose an unreasonable risk of danger to society. There is evidence that the commitment offense was carried out in an especially cruel manner. Petitioner went to the home of the victim three times, kidnaped him at gun point, drove him and Maldonado to a desolate area, and then shot the victim twice. There was evidence that Petitioner demonstrated a callous disregard for the victim's suffering insofar as the victim remained alive after the shots, but Petitioner left him bleeding on the side of the road without summoning an ambulance or help. There was also some evidence that the motive for the crime – that Petitioner believed the victim had property belonging to Petitioner's co-worker – was extremely trivial. In addition, because Petitioner had only engaged in alcohol recovery programs and accepted responsibility for the crime two years prior to the hearing, even though he had been incarcerated for 17 years, the BPT could reasonably find a risk that these gains would not endure and that Petitioner would become dangerous after his release from prison. These factors -- the facts of the commitment offense, and the Petitioner's relatively recent gains in prison – amounted to "some evidence" that Petitioner's release would unreasonably endanger public safety..

The Ninth Circuit has noted that continued reliance on the unchanging factors of Petitioner's commitment offense will "at some point violate due process" unless the

1 unchanging circumstances reliably establish that Petitioner presents an unreasonably
2 public safety risk.  *See, Hayward,* 512 F.3d at 545 (citing *Irons* and *Biggs*).  In this case,
3 however, Petitioner had served approximately 18 years in state prison, substantially less
4 that the  minimum 27-year term of his sentence.  Thus, not enough time had elapsed for
5 the BPT's reliance on the commitment offense to raise the due process concerns discussed
6 in *Hayward* and *Biggs*.

Based upon the record in this case, the state courts' determination that there was some reliable evidence to support the BPT's decision, and that Petitioner's right to due process was not violated, was not contrary to or an unreasonable application of federal law.  *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  Accordingly, habeas relief is not warranted on this claim.

4. <u>INA</u>

Petitioner further claims that BPT's denial of parole violates INA.  A hold has been placed on Petitioner pursuant to which deportation proceedings will be initiated under the INA upon his release from prison.  Petitioner claims that by denying parole, the BPT has extended his incarceration "beyond the statutorily required term," and thereby delayed his deportation.  Petitioner does not cite identify any statute requiring the BPT to have released from prison at the 2004 hearing.  California's sentencing statutes certainly did not so require: at the time, Petitioner had served approximately 18 years of a sentence authorizing his incarceration for a term of 27 years to life.  Petitioner cites no provision of the INA or other federal statue, and this Court is not aware of any, requiring that California's parole board release him or any other inmate at any particular juncture, or simply because the inmate is potentially eligible for parole.  For the reasons discussed

above, there was sufficient evidence that Petitioner's continued to present a risk of danger to the public that the BPT could deny parole without offending the federal constitutional guarantee of due process. Accordingly, habeas relief is not available on this claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: May 19, 2008

*/s/ Jeffrey S. White*
JEFFREY S. WHITE
United States District Judge

NORTHERN DISTRICT OF CALIFORNIA

CORTEZ,

        Plaintiff,

  v.

KANE et al,

        Defendant.

Case Number: CV05-02478 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 19, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Javier Cortez
P.O. Box 689
D44595
G/W # 246-L
Soledad, CA 93960-0689

Dated: May 19, 2008

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk